WILLIAM G. COOKE

*v.*

EMMA L. COOKE.

*Filed at Ottawa October 29, 1894.*

1. DIVORCE—*circumstantial evidence of adultery.* Where the circumstances proved fairly and reasonably lead to the conclusion that adultery has been committed, a finding to that effect will stand.

2. SAME—*particular facts held sufficient.* Abiding in a house of assignation from midnight till nine next morning, with lights extinguished, and being seen embracing an inmate soon after entering, will sustain a finding of adultery.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county ; the Hon. LORIN C. COLLINS, Judge, presiding.

Messrs. BARNUM, HUMPHREY & BARNUM, for the appellant.

Mr. F. M. WILLIAMS, and Mr. F. W. BLAIR, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court :

This was a bill for divorce, brought by Emma L. Cooke, in the circuit court of Cook county, against William G. Cooke. The bill charged the defendant with habitual drunkenness, extreme and repeated cruelty, and adultery. The defendant put in an answer to the bill, in which he denied each and all of the charges made in the bill. A replication having been filed, a hearing was had before the circuit court, without a jury, and the court found the defendant guilty of adultery, as charged in the bill, but made no finding as to the other two charges. A decree of divorce was entered and the custody of the two children was awarded to the complainant. The defendant appealed to the Appellate Court, where the decree of the circuit court was

affirmed. To reverse the judgment of the Appellate Court the defendant appealed to this court.

The parties were married in Chicago on the 6th day of August, 1884, and from that time until July, 1887, they lived and cohabited together as husband and wife. From July, 1887, until March 21, 1892, the date of the filing of the bill, the parties resided together but occupied separate rooms.

Much evidence was introduced on the hearing on the charge of habitual drunkenness and extreme and repeated cruelty, but as the court made no finding on those charges, the evidence on that branch of the case will not be considered.

No fault is found in the argument with the decision of the court on the admission or exclusion of evidence, but it is insisted that the evidence is insufficient to prove the charge of adultery, and upon this ground, and upon this alone, the defendant asks for a reversal of the decree.

Much time was consumed on the hearing before the chancellor, and the witnesses of the respective parties appeared in open court and testified in person to the facts appearing in the record, and the trial seems to have been conducted with fairness and impartiality.

The bill contains several distinct charges of adultery. Among the number is the following: "On Wednesday night, January 27, 1892, defendant went to house No. 17 East Harrison street, kept by one Edna Koch, which is notoriously a house of ill-fame, which he entered at twelve o'clock.  *  *  *  The inmates were of dissolute character.  *  *  *  He retired with one of them, and remained until 9:15 the following morning;  *  *  *  that he at that time and place committed adultery in said house with one of the inmates." The defendant answered the foregoing charge of the bill in substance as follows: Defendant admits that on Wednesday night, January 27, 1892, after a theatrical performance he went to house No. 17 East Harrison street, which he knows is occupied

by Edna Koch as a reputable boarding house, which he entered on a legitimate business errand. He denies seeing or associating there with a woman or women of dissolute character. He denies that he remained until 9:15 the following morning, or that he there, then or at any time committed adultery.

It seems from the evidence that the defendant, for a long time before the filing of the bill, spent many of his nights away from home, and the complainant finally employed the Mooney & Boland agency to ascertain the whereabouts and conduct of the defendant during his absent nights from home. On the night of January 27, 1892, Joseph Meyer, who was connected with the agency, testified that he saw the defendant, in company with one Baker, at the Chicago Opera House. After the show was over the defendant and Baker started for No. 17 East Harrison street. After stopping at various places on their way, for drinks, they reached the place about twelve o'clock at night. They entered the house, and in a short time the witness saw Cooke, through the window in the parlor, sitting on a sofa, holding one of the female inmates of the house on his lap. The evidence of this witness does not stand alone, but he is corroborated by four other witnesses, including the complainant, who testify that they saw Cooke enter the house and saw him on the sofa with the girl on his lap, as testified to by Joseph Meyer. After the witnesses, five in number, had seen the defendant in the house, as stated, they then selected a position where they could see any person who might leave or approach the house, and remained in that position during the night, and they testify that the defendant did not leave the house that night, but remained all night and until 9:30 the next morning, when they saw him and Baker leave the house. There was also evidence introduced tending to prove that No. 17 East Harrison street was a house of prostitution. Philip Miller, a policeman in whose district the house is located, who had been on

the police force nine years, testified that he knew the house, its character, and Edna Koch who kept the house. He also testified that it was an assignation house.

Emil A. Meyer, a witness, residing at No. 1 South Ada street, who was with the party on the night of January 27, testified : "I saw the defendant go into 17 East Harrison street. I saw him come out the next morning about fifteen minutes after nine, and I saw the defendant through the window at about twelve o'clock. Myself and Williams, Mrs. Cooke and Mamie Dowd were in the carriage, driven by a fellow named Manicke, I think. When we reached 17 East Harrison street the curtain was up. We looked into the window,—I think the east window,—and saw Cooke sitting there with a woman dressed in white on his lap, with his left arm thrown about her. I just looked in there a very short time and then went to Michigan avenue with Mrs. Cooke and the rest of them, and then returned to 17 East Harrison street with Sandmeyer, and we went in, five or ten minutes after the defendant went in. We sat in the back parlor and drank three bottles of beer at one dollar a bottle. There was a front parlor and a back parlor, one immediately back of the other. I saw the defendant with the woman on his lap, through the window in the front parlor. Sandmeyer was with me, Mrs. Cooke, Mamie Dowd, F. M. Williams, and, I think, Sandmeyer. After I went inside of 17 East Harrison street the defendant remained in the front parlor. I did not see him. I was in the back parlor. The parlors were separated by folding doors. I did not see the defendant after I went into 17 East Harrison street, except in the morning when he came out. I heard a man in there,—a man and woman laughing and talking, and rattling of glasses. I saw three women there. Sandmeyer and I remained in 17 East Harrison street from half an hour to an hour. After coming out of 17 East Harrison street we went back to the carriage and stayed there, so we could see the premises constantly until the

next morning. One of the three women inside that house was dressed in light, the other two dark. One I should call 'mother hubbard' and the others ordinary dresses." The witness also testified : "When the girls came into the room they drank beer and joked and laughed, and danced around a little. Sandmeyer had his arm around the one in the dark dress."

As opposed to this evidence, the defendant testified that he entered the house in the night of January 27 with Baker, and only remained about ten minutes, when he left for home. In this he was corroborated by his companion, Baker, and the keeper of the house, Edna Koch.

Other charges of adultery were made in the bill, and evidence introduced tending to sustain them, but it will serve no useful purpose to refer to the evidence in detail bearing upon these charges. Whether the defendant was guilty of adultery as charged in the bill was purely a question of fact for the court, sitting as a jury, and the rule is well settled by numerous decisions in this State, that unless the decree is manifestly against the weight of the evidence it will be affirmed. It is seldom the case that adultery is established by direct evidence, · but, on the other hand, as a general rule, resort must be had to circumstantial evidence, and when the facts and circumstances introduced in evidence fairly and reasonably lead to the conclusion that the act has been committed, a court or jury will be justified in finding the charge sustained.

In *Daily* v. *Daily*, 64 Ill. 329, where adultery was alleged in the bill, the court said : "In all, or nearly all, such cases, there is no direct and positive evidence of the acts charged. In such cases the parties generally use every effort to conceal the act, and courts and juries are compelled to determine the question from the behavior of the parties and from a great variety of circumstances, either of which, when considered alone, would be insuf-

ficient to prove the charge, but when considered together may be, and frequently are, amply sufficient to establish the offense. It, like all other charges, may be established by circumstantial evidence, and the evidence need only, when considered together, convince the mind that the charge is true."

In *Bast* v. *Bast*, 82 Ill. 584, where adultery was alleged in the bill as a cause of action, the court said : "As to the testimony in all such cases it must generally be circumstantial. The fact of adultery is to be inferred from circumstances that naturally lead to it by a fair inference, as a necessary conclusion. The direct fact of adultery can seldom, or ever, be proved. We think sufficient facts were proved in this case 'to lead the minds of reasonable and just men' to the conclusion established by the verdict, and we have no disposition to disturb it."

Here, without referring to the evidence in support of other charges, the testimony in regard to the occurrence on the night of January 27, 1892, was ample to sustain the decree of the court, unless the witnesses for the complainant testified falsely. If these witnesses tell the truth, the defendant, at twelve o'clock in the night, entered a house of assignation. Shortly after he enters the house one of the inmates is seen in his embrace. Two hours later the lights in the house are extinguished, and the defendant remains during the night and until nine o'clock the next morning before leaving the house. Here was ample evidence from which the court might conclude that adultery was committed by the defendant. Indeed, unless the evidence of the complainant and her witnesses is disregarded entirely, no other reasonable conclusion can be reached.

We think the decree fully sustained by the evidence, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*