## Clara E. Fowler, Appellee, v. Nelson H. Fowler, Appellant.

term, 1942.
June 27, 1942.

Heard in this court at the May term, 1942. Opinion filed June 27, 1942.

KARNS & BANDY, of East St. Louis, for appellant.

ARTHUR W. SUMMERS, of Eldorado, for appellee.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Saline county, Illinois, granting a divorce, custody of a minor child, and alimony of $60 per month, together with costs of suit and solicitor's fees to appellee Clara E. Fowler (hereinafter called plaintiff) from appellant Nelson H. Fowler (hereinafter called defendant).

The record in this case discloses that plaintiff filed her suit for divorce in the circuit court of Saline county on May 7, 1941 and alleged, among other things, that plaintiff and defendant were married on or about December 31, 1937 and separated on or about January 1, 1941. She further alleged that one child, a son, was born of the marriage, which child is still living. The complaint contained the usual averments, and assigned as the ground for divorce, the infidelity of the defendant, and it was particularly charged in the complaint that on or about January 15, 1941, at or near Eldorado, in the State of Illinois, the defendant committed adultery with a woman who, for purposes of the suit, was designated as "Jane Doe" and that at divers other times and places the defendant had committed adultery with the same woman and with various other women. The complaint alleged that the defendant was engaged in the business of carriage of merchandise for hire, and that he had a $60 per week income therefrom. Plaintiff set forth that she was possessed of no property or income, except household goods which had been given to her by the defendant. Plaintiff prayed for a divorce, for custody of the child, and for alimony for herself and child, together with solicitor's fees and costs of prosecution of the suit. To this com-

plaint, the defendant, on June 13, 1941, filed his answer. By his answer, the defendant admitted the marriage and birth of the son, and denied specifically the charge of adultery as set out in the complaint, and further denied that he had committed adultery with the person designated as "Jane Doe" at the time or place mentioned, and specifically denied that at any time or place he had committed adultery with said woman, or with any other woman. Defendant, by his answer, denied that plaintiff was entitled to the relief sought in her complaint, and prayed to be dismissed from said suit, with his costs. This case came on for hearing upon the complaint and answer on September 8, 1941, and was heard by the court, without a jury, and on September 9 a decree was signed and entered in said cause, by the terms of which plaintiff was given the relief as hereinbefore set forth.

The decree in this case was entered by the court on evidence offered by the plaintiff and her witnesses, as the defendant, at the close of the plaintiff's case, moved the court to dismiss the case for want of equity on the ground of a total failure of proof, and this motion being overruled, the defendant elected to stand upon his motion based upon the testimony presented, and accordingly, offered no evidence. This appeal followed, and the sole and only question presented to us for determination by this appeal is whether or not the evidence produced by plaintiff and her witnesses was sufficient in point of law to entitle her to the decree for divorce in this case. To a consideration of the evidence offered on behalf of the plaintiff we must now address ourselves.

Plaintiff, testifying as a witness in her own behalf, testified to the marriage, separation on or about January 1, 1941, birth of the child, and her lack of income. She further testified that in November 1940 she found two letters in the glove compartment of defendant's automobile, which letters were signed in

the name of a woman known to her, and were addressed to her husband as "Dearest Darling"; that she had a conversation with defendant about the letters and he said to her that it would be silly for anyone to think anything about these letters, that he knew the woman and that they had a place of business in Mt. Vernon, and he was a good friend of her husband, that the letters did not mean anything and she should not think anything about them. The contents of the first letter was to the effect that the writer had missed the defendant since he had gone away and that she would be in Mt. Vernon over the week end and would like for him to come there unless he had to go home. The second letter was to the effect that she had received his letter in reply to the writer's first letter, and was glad to hear from him; that she had missed him so much; and that when she saw him over the week end she didn't get to say anything to him because of the other people that were with him. Plaintiff testified that this, in substance, was the contents of the second letter. She testified she talked to her husband later about both letters and that he told her she shouldn't think anything about the letters as he, the defendant, and the writer, were only friends.

Plaintiff further testified that on the day or night of the 24th of May, 1941, she saw her husband riding around town in Eldorado in a car with his brother and a girl, and that to attract her attention they would hit on the side of the car. She testified that she had never seen her husband with any other woman, except on this occasion when he was accompanied by his brother.

Plaintiff testified that after her marriage with defendant they lived in Eldorado from 1937 until October 1940, when her husband went to St. Louis on the job that he still has, and has had continuously from that date, until the time of the trial. It appears from the evidence that her husband was engaged in the business

of trucking merchandise for hire, and that he had asked her to go to St. Louis and live with him, but that she told him she wouldn't go because she knew he was living in St. Louis with someone else, and that she didn't intend to put up with that. Plaintiff further testified she tried to persuade him to take a job that had been offered in Canton, Ohio, but that her husband preferred to stay with his job in St. Louis, and that she informed him he was thereby making a choice between her and someone else. On cross-examination of plaintiff she stated that she had gone to St. Louis shortly after her husband became employed there and came back home for the holidays; that her doctor would not permit her to go back, although the defendant had asked her several times to come to St. Louis and live with him; and that said requests had been both oral and by letter; and that on each and every occasion she always refused to go. Plaintiff further testified that every time she had a conversation with the defendant wherein she charged or complained to him about any alleged infidelity, or unfaithfulness, that he, on each and every occasion, denied such conduct on his part.

From the testimony of Kathryn R. Stinson, a witness called on behalf of the plaintiff, it appears that she had seen the defendant walking along the public square one evening with some woman whom she did not know and that on another occasion she had observed the defendant riding in an automobile with some other woman, and that he drove into the driveway of the Lion's Club at Eldorado and turned around and came right back out onto the paved street.

Kenneth Cox, a witness called by plaintiff, testified that he saw the defendant out in front of a public dance hall just outside of Eldorado sometime in November 1940, at about 9 o'clock on a Monday morning; that while he was there he saw the defendant standing beside an automobile in which two women were seated, and while he couldn't recite the conversation, yet he knew that one of the women asked the defendant for

money. This witness' testimony discloses that the defendant refused to give her any money, and this witness does not disclose any knowledge on his part as to why this woman wanted the defendant to give her money.

It appears from the evidence of Melvin Driggers, called as a witness for the plaintiff, that the defendant had gone with Frieda Driggers before his marriage to the plaintiff, and that some time in the Spring or Summer of 1940, the defendant came to Melvin Driggers' home and asked to see his daughter. This witness testified that he objected to that since the defendant was married, and on the cross-examination of this witness it appears that his daughter was not at home and that the defendant did not see her.

It appears from the testimony of Barbara Gates that in May 1941, she met the defendant in St. Louis at a street carnival, and that he was in the company of a young woman, not the plaintiff, and that it was about 11 or 12 o'clock at night when she met them, and that there were two other men and the defendant, and this young woman, walking around the carnival grounds.

The plaintiff, in her brief, indicates that if the foregoing was all of the evidence, it would be a little weak perhaps, although she contends it points to adultery very strongly when a married man carries on in that manner, but great reliance is placed upon the evidence of the Elders family. From the testimony produced by Mrs. Zoa Elders it appears that she lived on the outskirts of Eldorado on a public road near the camp ground; that about a half mile due east of her home is a woods known as Mabrey Woods; that in August 1940, she saw the defendant drive past her house in an automobile; and that he was accompanied by a young lady unknown to this witness; that it was about the middle of the afternoon when she observed the defendant and the girl drive by her house, Billy Elders, a 14-year-old boy, who lived with his mother, testified that he had known the defendant for about three years,

and that in June 1940, he saw the defendant over in the Mabrey Woods. He testified that he saw defendant driving a car, and there was another man with him and after their car was another car in which were two women, and that these cars were about 10 or 20 feet apart, and that about five minutes after he saw them he went down towards the Mabrey Woods and when he got down there he saw the defendant over at the other car with the two women. He further testified that the girls, who were young women, did nothing and that he did not know them; that he was in the cornfield about 100 yards from them; and that the defendant, after talking to the two girls over at their car, then went back and got in his own car and drove away. This witness testified on cross-examination that the defendant was in sight of him all of the time and that all he was doing was just talking to the girls. On redirect examination this witness testified defendant got into the car with the girls and that he could see defendant all the time and that all he observed defendant doing was just talking. J. L. Elders, a 17-year-old son of Zoa Elders, testified that he was with his brother at the time of the occurrence to which Billy had testified, and that it was about 3 o'clock on a Saturday afternoon in June or July 1940. His testimony is substantially the same as his brother Billy's. This fairly summarizes the evidence produced on behalf of the plaintiff, the legal sufficiency of which to form the basis for the decree is challenged by this appeal.

Reviewing courts hesitate to reverse a case tried by a judge without a jury, as the presumption is that the trial judge considered only the competent evidence. However, where there is a lack of competent evidence to sustain the judgment or decree, reviewing courts will not hesitate to reverse the same (*Decorators Supply Corp. v. Babka,* 290 Ill. App. 298).

It has been held many times by the Supreme and Appellate Courts that where, from a consideration of the

whole record, it is apparent that the evidence does not justify the decree, it is the duty of the reviewing court to reverse the decree (*Sharkey v. Sisson*, 310 Ill. 98).

In order to establish adultery by circumstantial evidence, the proofs must convince the mind affirmatively that actual adultery was committed, since nothing but the carnal act can lay the foundation for a divorce. A divorce on the ground of adultery should be granted only upon proof of the clearest and most convincing character (*Blake v. Blake*, 70 Ill. 618; *Ovenu v. Ovenu*, 201 Ill. App. 607).

A careful and candid consideration of the evidence produced in this case brings us to the inescapable conclusion that the evidence produced was not sufficient to furnish an adequate legal basis for the decree for divorce on the ground of adultery. In this proceeding, as in all divorce proceedings, not alone are the plaintiff and defendant concerned, but society itself has a proper concern over the marriage relationship. From all of the books do we learn that in a certain sense there are three parties to every divorce proceeding, namely: The plaintiff, the defendant, and society as a whole. The dissolution of a marriage relationship is so grave and fraught with such vital concern to society as a whole, that it will not be lightly terminated. Only when the evidence, if circumstantial, impels to the inescapable conclusion that the charges assigned are true, will the court sever the marriage ties, and certainly it may be argued that it is even all the more strongly true where, as in this case, the charge is a charge of adultery that carries with it some stigma upon the defendant, as well as the child born of the union.

For the reasons heretofore set forth in this opinion, this case is reversed and remanded to the circuit court of Saline county, with directions to dismiss the complaint for want of equity.

*Reversed and remanded, with directions.*