(No. 30238.—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
MARJORIE MARCY, Appellant, *v.* LEONARD MARCY, Appellee.

*Opinion filed November 20, 1947—Rehearing denied May 13, 1948.*

GUNN, J., and MURPHY, C.J., dissenting.

J. J. LUDENS, of Sterling, for appellant.

WARD & WARD, and BESSE & BESSE, both of Sterling, for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal by Marjorie Marcy from a decree of the city court of Sterling, awarding to Leonard Marcy a divorce on his counterclaim on the grounds of adultery, said decree providing that the interest of Marjorie Marcy in a house in Sterling be transferred to her husband and that she execute a deed of conveyance to said premises unto her husband upon his paying to her the sum of $3000 in full of all her property rights. A freehold being involved the appeal is perfected to this court.

Marjorie Marcy filed suit in the city court of Sterling against her husband asking that the court award her separate maintenance. She alleged that the parties herein married in 1923 and that they continued to live together until September 10, 1946, when without fault she left the home that they had occupied together. The complaint also charged that the defendant refused and neglected to provide his wife with money and necessities for many years and it was necessary for her to go to work in order to support herself and their child who was then about 15 years of age. It was also alleged that the husband frequently accused the plaintiff of going out with other men, accused her of adultery and threatened her with physical violence, frequently calling her vile and obscene names. The husband filed an answer to the complaint in which he admitted the residence and marriage, but denied the allegations as to the unkind treatment and denied the allegations of non-support. He admitted that he occasionally replied to her with curses, but denied that he had ever falsely accused her of going out with other men. The husband also filed a counterclaim for divorce in which he charged the plaintiff with adultery with various men whose names were unknown and at times and places unknown. He later filed a bill of particulars alleging that the plaintiff had sexual intercourse with Lawrence Mahoney on numerous occasions, the exact dates of which were unknown, but that the first of said occasions occurred in the home of the

plaintiff and the defendant before they moved to Sterling in 1944. Subsequently, the defendant filed a supplemental answer and counterclaim in which he charged the wife with adultery with one Dennis Mills on the 18th and 25th days of December, 1946. These allegations of adultery were all denied by the plaintiff.

Upon a hearing the court heard the testimony of numerous witnesses and entered a decree of divorce in favor of the husband on the ground of adultery. The court also ordered that the interest of the wife in the house be transferred to the husband and awarded the wife $75 a month for the support of the 15-year-old daughter and ordered the husband to pay the wife the sum of $3000 in full of all her property rights.

The plaintiff contends that the court erred in finding her guilty of adultery and in granting the divorce to the defendant. She also contends that the court erred in admitting improper evidence and that the court erred in depriving her of her rights to the real estate for the reason that there was no allegation in the pleadings and no evidence was offered as to the value of the real estate, and there was no allegation in the counterclaim asking for such relief. She also contends that the court should have awarded her separate maintenance.

A careful review of the evidence in this case shows that the parties herein were married in 1923 and shortly thereafter started farming in Whiteside County, where they lived until August, 1944, when they moved to Sterling. There they lived in a home which the husband purchased for $6500, the title to this property being placed in joint tenancy and not in tenancy in common. At the time the parties moved to Sterling, the husband operated one farm and leased another farm to a tenant. He was the owner of approximately 350 acres of land at the time he left the farm which was unencumbered. When he purchased the home at Sterling, he placed a mortgage of $3000 on the

premises, which was still a lien at the time the decree of divorce was entered. The evidence shows that during the time the parties lived on the farm, hired help was employed, generally one man for the entire year and, during the summer season, two men. It also appears that a hired girl was employed to assist with the housework, except for the winter months. The parties lived as husband and wife until the time the daughter was born. About the time the daughter was born, the husband discussed with his wife her conduct with reference to a hired man by the name of Edward Jansen, and a friend, Park Thede. He had seen her kissing the hired man and had seen her in her swimming suit in the afternoon with Thede in an automobile. After the daughter was born, the wife refused to occupy the same room with the husband and from that time until she left him on September 10, 1946, the marriage relationship was not continued. The house in which they lived on the farm was a modern farm house and had been furnished with the necessities of life. They had charge accounts at nearby stores and the wife raised from 200 to 300 chickens, she keeping the income therefrom, and in addition, for several years, she received an income of about $35 a month for transporting pupils to school in the family car, the husband providing the upkeep of the car. At the time of the hearing, she had a bank account in her own name and also owned some stock in a cold storage locker company.

After the parties moved to Sterling in August, 1944, the husband operated one farm with a hired man and went back and forth to the farm every day. He had a cold storage locker in which he kept meat and he brought potatoes and milk from the farm for the use of the family. It appears that he gave money to the daughter to purchase groceries after the wife had refused to accept money from him. The wife insisted upon getting a job and refused to cook the meals for the husband, and as a result

he usually ate his morning and evening meals in restaurants. It appears from the evidence that at the wife's insistence she was determined to take in roomers from whom she collected rentals and kept the money. Among the roomers was Lawrence Mahoney, who at one time had been the hired man on the farm before they moved to town. The husband protested to Mahoney rooming in the house, but he roomed there for several months until matters came to a head and the husband insisted that Mahoney leave. In the summer of 1946, the wife went to Mayo Clinic at Rochester, Minnesota, without advising her husband that she intended to go, and upon her return she informed him that she had ulcers and that she desired a divorce and that he should get another woman.

It is contended by the appellant that there is no proof of the charge of adultery. Where adultery is charged, there is very seldom direct or positive evidence of the acts charged. The parties generally use every effort to conceal the act and usually deny that adultery has been committed, or attempt to explain away the circumstances which indicate adultery. In such a case it becomes very important to test the credibility of the witnesses testifying since it can be assumed that the defendant and anyone with whom she is alleged to have committed adultery would deny the charge. The position of the chancellor in such a case, therefore, becomes very important, particularly where he has heard all of the evidence and has had an opportunity to observe the witnesses and their demeanor while testifying, their candor or lack of candor and to consider the circumstances in issue.

When the facts and circumstances introduced in evidence fairly and reasonably lead to the conclusion that adultery has been committed the court will be justified in finding the charge sustained. (*Cooke* v. *Cooke*, 152 Ill. 286; *Daily* v. *Daily*, 64 Ill. 329.) As this court stated in the case of *Bast* v. *Bast*, 82 Ill. 584, "The fact of adultery

is to be inferred from circumstances that naturally lead to it by a fair inference as a necessary conclusion. The direct fact of adultery can seldom, or ever, be proved."

A careful review of the evidence in this case indicates that the conduct of the wife over a long period of time showed no affection toward the husband. It is admitted that the marriage relationship had not existed between the parties for many years. It is not denied that after the parties moved to Sterling, the wife was in the habit of visiting taverns alone or with other women, and associating with men whom she did not know before meeting them in a drinking place. It appears that she made a practice of having dates with other men, indicating an interest in other men and a disposition to free herself from the responsibilities of a wife and mother. It has been proved that she went in the night time with other men unaccompanied and, on at least one occasion, she parked in a lonely spot with another man. While society might not condemn her for her conduct in visiting taverns and becoming acquainted with men, her conduct in accompanying a man not her husband in the night time to a lonely spot could not be passed without notice and indicates an adulterous disposition on her part. These acts, coupled with the husband's testimony of finding the wife naked in the bathroom with the door open while talking to a roomer in the next room with his door open, is strong evidence indicating adultery.

A review of the wife's testimony reveals many inaccuracies therein, indicating that she was not telling the truth. It appears from her testimony that she told untruths with reference to her financial circumstances. One time she testified that she had no money and that she had no bank account. Later she testified that she did have a bank account. She stated that during the time she lived with her husband he did not give her any money and then she admitted that he did give her money at times. Her

testimony throughout indicates an attempt by her to impress the court that her plight was extremely difficult and that she was entitled to great sympathy and consideration. Her testimony indicates that she attempted to do this so well that at times startling untruths appear which no doubt affected the chancellor's consideration of her testimony regarding the alleged adultery. The credibility of the wife's testimony was likewise affected by the daughter's testimony. The daughter's story was entirely favorable to her mother, as it could reasonably be expected to be in view of the fact that she resided with her mother. However, a page of the daughter's diary was admitted in evidence which showed that, several years before, her mother's conduct with reference to a hired man was of grave concern to the daughter.

On the other hand, the testimony of the husband was not impeached in any respect. It appears that he was straight-forward in his story, that he admitted that everything in the marriage was not entirely perfect, and it is apparent that he did not try to color his story to make it more favorable to him.

While it is true that the evidence of adultery in this case is not as clear as in many cases, we believe that the decision of the chancellor in finding the wife guilty of adultery was established by proof of the specific charges alleged in the complaint. The decree for divorce having been entered by the chancellor upon conflicting testimony as to the facts and findings on which it was based, we would not be justified in reversing that portion of the decree which is dependent upon the weight and credibility to be given to the testimony of the parties. *Podgornik* v. *Podgornik*, 392 Ill. 124.

It was contended that the court erred in admitting in evidence the page from the diary of the daughter with reference to the conduct of her mother and Mahoney, one

of the corespondents. We can see no error in the court admitting this evidence since it tended to affect the credibility of this witness.

It has also been contended by the appellant that the chancellor had no authority to deprive her of her rights in the property which the parties held in joint tenancy, since the allegations of the counterclaim for divorce did not contain any prayer for relief as to the property owned jointly by the parties hereto.

The jurisdiction of a court hearing divorce matters depends on the grant of the statute and not upon its general equity powers. *Anderson* v. *Anderson,* 380 Ill. 435; *Smith* v. *Smith,* 334 Ill. 370.

Under section 17 of the Divorce Act, (Ill. Rev. Stat. 1945, chap. 40, par. 18,) the court in a divorce action may compel the conveyance of property held by one party which in equity belongs to the other and may adjust the equities of the parties in any property owned by them jointly. However, in order to warrant the court to direct the conveyance of property belonging to one or the other there must be special circumstances and existing equities justifying the conveyance and such special circumstances and equities must be alleged in the complaint and established by the proof. In the case at bar, there are no allegations of special circumstances or allegations asking for relief with reference to this particular property which is owned in joint tenancy. It appears from the record that the property cost $6500 when it was purchased in 1944 and that it is encumbered with a mortgage of $3000. There is no evidence as to any other value of the real estate and there is no evidence as to the value of the real estate at the time the decree was entered. As was stated in the case of *Podgornik* v. *Podgornik,* 392 Ill. 124, "Relief .can be granted only in accordance with the allegations of the complaint and which are sustained by the proof. A decree

cannot be rendered upon facts shown by the evidence which would warrant relief unless those facts are alleged in the complaint."

It is, therefore, our opinion that that portion of the decree which compelled the wife to convey her interest in the property upon the husband paying to her the sum of $3000 is erroneous.

Therefore, the decree for divorce will be affirmed and that portion of the decree providing for the conveyance by the wife of her interest in the real estate to her husband upon his paying to her the sum of $3000 will be reversed.

*Affirmed in part and reversed in part.*

Mr. JUSTICE GUNN, dissenting:

I am unable to agree with the result reached by the majority opinion in this case. The facts recited in the opinion do not prove adultery by the proof required under the decisions of this court. The facts set out in the opinion of the court are characterized as proof of an adulterous disposition. This does not constitute adultery. One of the instances testified to is stale with age, and the other has no evidence whatever to support it. The man Mahoney worked for the appellee for two or three years in the early part of the 1940's. The only testimony supporting the charge of this man is that of the husband, and yet, he continued to live with his wife for some four or five years after without protest, and did not discharge the hired man. This makes his testimony highly improbable. And besides, the facts narrated by him do not show adultery, but at the most a lack of modesty. There is absolutely no proof of adultery with the man Mills. Four people were present in the party, and all of them testified that it did not occur.

The law requires, and has required for a great many years, that because of the effect of a decree finding adultery upon the general public, and other innocent members of the family, adultery is never presumed, but must be proved

so no doubt can be left in the mind of a reasonable person that the act of adultery was committed. (*Blake* v. *Blake*, 70 Ill. 618; *Hoef* v. *Hoef*, 323 Ill. 170.) The cases cited by the court in its opinion are all cases in which the proof was ample, as for instance *Cooke* v. *Cooke*, 152 Ill. 286, and *Daily* v. *Daily*, 64 Ill. 329, which were both cases in which the offending party was seen several times in a house of ill-fame, which in itself in many States is regarded as sufficient proof.

The opinion thrusts aside the testimony of the mother and child as being unworthy of belief, and yet I can see but little difference between the weight of their testimony and that of the appellee, who was by no means an admirable character, by his own admission.

I concede that the attitude of the appellant in this case was not a model to be followed, but still the law requires that the proof of adultery be established by a preponderance of the evidence before a decree can be granted upon that ground. I find no evidence in the record which establishes the charge in the manner required by the authorities cited above.

Mr. CHIEF JUSTICE MURPHY joins in the foregoing dissenting opinion.