Sam Gillespie, Plaintiff-Appellee, v. Margaret Gillespie, Defendant-Appellant.

Gen. No. 65–59.

Fifth District.

April 20, 1966.

Burnside & Dees, of Vandalia, for appellant.

Sonnemann & Corbell, of Vandalia, for appellee.

MORAN, J.

This is an appeal by the defendant from a decree of the Circuit Court of Fayette County granting plaintiff a divorce in a contested, nonjury trial.

Plaintiff sued defendant for divorce on the ground of desertion. The defendant counterclaimed for certain monthly support payments due under a settlement agreement. The court decreed the divorce sought by plaintiff and allowed the counterclaim sought by the defendant. No cross appeal has been taken on the judgment entered on the counterclaim. No questions are raised on the pleadings.

Plaintiff's theory is that defendant wilfully deserted plaintiff without reasonable cause for the space of more than one year prior to the filing of the complaint and that the trial court's finding of fact is reasonably supported by the evidence and therefore the decree for divorce granted to plaintiff should be affirmed.

Defendant's theory is that the parties separated by mutual agreement and that the trial court's finding that the separation resulted from a desertion of the plaintiff by the defendant, is contrary to the manifest weight of the evidence in the case.

Plaintiff and defendant were married in June of 1931. With the exception of a brief separation in 1961, they lived together until February of 1963. Three children were born of the marriage, two of whom were adults and living separate and apart from their parents at the time of the filing of the complaint for divorce in this case. A minor son married after the filing of the complaint and was living with his wife in Brownstown, Illinois, at the time of the trial.

In February, 1963, the defendant moved out of the bedroom which she had jointly occupied with plaintiff, into a separate room in the house. Plaintiff testified that he came home one evening and asked his wife to accompany him to the Holiday Inn in Effingham for dinner.

When she refused his invitation, he changed clothes and went to the Holiday Inn for dinner, returning home at 9:30 in the evening. The next day he came home for lunch, but finding his wife gone, went back uptown, ate and worked around the garage until the middle of the afternoon. He then returned home and asked his wife where she had been. She replied, "Well, I have been to see my attorney."

Plaintiff testified that since then his wife has refused to have any marital relations with him; that she refused to prepare meals for him; that she refused to take care of his clothes or laundry and that this refusal continued even though he had asked her to be a wife to him; that she refused to do anything for him; refused to feed him although she provided for their son, John; that she kept the rest of the house clean but not the plaintiff's quarters; that when their daughter was in the hospital in Chicago he went to see her, and spent the night in the daughter's home with his son-in-law. At that time he called his wife who was then in Chicago to ask her to go to dinner with him and their son-in-law, but she refused.

He further testified that in February of 1963 he and his wife were partners in a garage business and that after this difficulty she consulted a lawyer regarding a property settlement. She refused to talk with him except in the presence of an attorney. The talks they had in the presence of his attorney and her attorney concerning a property settlement culminated in the signing of an agreement on October 1, 1963, styled "Property Settlement Agreement." Under the terms of this instrument plaintiff obtained certain real and personal property and the defendant certain real and personal property including the marital home. The agreement further provided that the plaintiff pay to the defendant the sum of $75 per month for the support of their minor child for so long as the minor child resided with defendant and for

41

the further sum of $200 per month for the separate support and maintenance of the defendant. It further provided:

> In the event a decree for divorce shall hereafter be decreed by any court of competent jurisdiction, that part of this agreement relating to the division of the property and which may not have been fully executed by said date, shall be made a part of said decree; but the provisions herein for support of the wife and child shall not be a part of said decree nor be binding upon either party hereto in the determination of such matters.

After this agreement was entered into the plaintiff moved into an apartment over his garage which he had previously furnished because he said he no longer had a home.

Defendant denied plaintiff had requested her to have dinner with him at the Holiday Inn in February of 1963 and denied that she had told him she had been to see her lawyer on the day following this supposed incident. When asked if she had moved into a separate bedroom in the month of February, 1963, defendant answered, "There is several bedrooms in the house and I choose my own bed." She admitted that she had not had marital relations with her husband from February until the time of the trial in April of 1965 and further stated that she never did tell her husband why she had changed bedrooms. She explained her actions by saying, "I would just say I had visited my lawyer and I had talked to him about business relations, not personal matters, and I felt it was better, that I could be more comfortable somewhere else." She denied doing this on legal advice, saying, "No, I had simply visited a lawyer about the business end, in which we were partners, and I just felt that with that discussion going on I would just rather be in another part of the house." When pressed further on

42

this point, she said, "It's my house, I could sleep where I wanted to." She did not remember whether it was before or after she saw her attorney that she moved out of the marital bedroom.

She testified that although she and her husband occupied separate bedrooms that she and her son and her husband lived in the same home; that she cooked the meals and that she did part of the laundry and a maid did part of it; that the husband sometimes joined them in the evening meal and that aside from sleeping with him, their marital arrangement was the same as it had been before. She further testified that the business problems existing between herself and her husband in the spring of 1963 were settled when the "Property Settlement Agreement" was signed on October 1, 1963.

The plaintiff has desired a resumption of the marital relationship at all times since the separation. On the other hand, the defendant has desired just the opposite, saying, "I refused to cohabit with my husband after February of 1963, because I just didn't want to, and still don't. I have not wanted to live with him since that date. I have made no effort to resume marital relations since February of 1963. As I sit here today, I have no desire to resume marital relations."

The defendant claims that the record conclusively shows that this separation was by mutual consent and therefore there could be no desertion by either party. She argues that this is conclusively shown by their entering into the support and property settlement agreement. She states that they separated under a property settlement agreement and that this precludes desertion by either party and shows that the separation was by mutual consent. Plaintiff says that as soon as the settlement was entered into he no longer had a home and that he felt he had to move out.

The course of action leading up to the settlement was initiated by the defendant who first contacted an attor-

ney in February of 1963. After extensive negotiations between the parties and their lawyers the negotiations culminated in the aforesaid agreement.

 If the separation between these parties was by mutual consent or agreement there could be no desertion by either party. It is well settled that mutual separation of husband and wife does not constitute wilful desertion. Lemon v. Lemon, 14 Ill2d 15, 150 NE2d 608. However, mutual consent to a separation means that the separation was by agreement and at the request of both parties. If the separation was against the will of one of the parties, there could be no separation by mutual consent.

After all the evidence was in, the trial judge stated that it was shortly after she refused to sleep with the plaintiff that she went to see an attorney; that she was the moving factor in the separation and in the securing of the settlement agreement. The court further pointed out that he understood that the parties could not just agree to separate and then obtain a divorce, but that this was not the case as the defendant was the moving force behind the whole separation; that she refused to have marital relations with the plaintiff; that she refused to participate in any social activities with the plaintiff; that she insisted on a support and property settlement agreement, so therefore there was sufficient evidence to show desertion on her part.

 The evidence in this case amply supports the findings of the trial judge that the property settlement and separation were not by mutual consent; that the proceedings were instituted and pushed by the wife who not only wanted the property divided but also insisted on discontinuing the marital relationship. The trial court felt that plaintiff had no alternative except to leave and this did not show in any way his agreement to the marriage separation. The reasoning of the trial court is practically the same as the reasoning in Parker v. Parker, 28 Ill App 22, wherein the court said at pages 24, 25:

44

. . . A division of the property was what she wanted. He, no doubt felt that there was no hope of ever returning and we think the preponderance of the evidence justified him in so thinking. There is no evidence going to show that he desired a separation but simply yielded to the necessities of the case, and to save himself greater loss, as he thought, made the required division of property. It seems to us he has tried throughout to do what was right and just by the appellee. She has never made any complaints, so far as the evidence shows, of his treatment of her. We think there was no collusion on his part for her to live separate and apart from him. It was a matter of necessity on his part. As he says he has always held himself in readiness to live with her but she still lives apart from him.

The defendant also claims that since plaintiff left his home and his wife, he is compelled to rely upon the rule of constructive desertion to sustain his cause of action for divorce and that the reasonable cause which would have justified his desertion and abandonment of his wife under that rule must have been such as would have entitled him to a divorce. Fritz v. Fritz, 138 Ill 436, 28 NE 1058; Holmstedt v. Holmstedt, 383 Ill 290, 49 NE2d 25. This argument would prevail in this cause had he indeed left his "home." After defendant refused to cohabit with him after 33 years of marriage, refused to cook his meals, refused to talk to him and insisted on a support and property settlement, he can no longer be said to have a "home." Therefore, when he left what had been the marital home, he did only what he felt compelled to do; for his spouse had taken it upon herself not only to extinguish the marriage relationship but also to effect a physical separation of the parties to the marriage.

45

When the defendant pursued the course of conduct she did, it had to end in a physical separation of the parties. It would be unreasonable to believe that defendant would expect plaintiff to stay in the former marital home after she had refused him any of the amenities that a married woman owes her husband. In Mathews v. Mathews, 227 Ill App 465, the court said at page 469:

> . . . If one spouse leaves the home because the other refuses to live with him or her and because of orders to go and not return, the one who leaves is not a deserter and has nothing to justify but must prove his or her reasons for going. The other party is the deserter, and to justify his or her course in sending the other away must prove a cause for divorce. If he or she does not relent and offer to take back the one who has left under such circumstances for two years, he or she has given the other a cause for divorce.

In the present case the defendant did not physically drive the plaintiff from her home but she made it impossible for him to continue to abide with her under the same roof.

In Karman v. Karman, 24 Ill App2d 123, 164 NE2d 521, the wife sued for divorce on the ground of desertion and the husband counterclaimed on the same ground. The husband, aged 77, and the wife, 62, lived across the street from each other before their marriage. They married and the husband moved in with the wife. The husband moved back to his home 28 days later. The facts were in conflict. The wife testified that she did not demand that the husband leave, but admitted no sexual relations after the first 13 days; that she made no preparation of lunch on the day of separation; that she called her lawyer; that she insisted the husband take items he had forgotten on departure; that she spoke with her

attorney before and after the separation; that she made no effort to reconcile or resume cohabitation, and in fact repulsed an offer of her husband to shovel her snow.

The husband testified that his wife called a lawyer and told him her lawyer said he couldn't stay; that she wasn't going to do any more work for him and that he couldn't get anything to eat.

In this case the review court, on the above facts, reversed the trial court who had granted a divorce to the wife, and remanded with directions to dismiss the wife's complaint and grant a divorce to the husband, saying at page 129:

> When she refused to cohabit with her husband in a reasonable manner and ordered him to leave, appellee became the deserter, and in order to correct this desertion it became incumbent upon her to make efforts to resume the marital relationship. She made no attempt to do so. Appellant did not consent to the separation and may not be prevented from prosecuting this action on that basis. The fixed intention of appellee to live apart negates her husband's obligation to establish a new home as the marital domicile. His failure to do so may not be interpreted as such consent to the continuance of the separation as would bar his right of action. There is no inconsistency between the finding in the first portion of this opinion that appellee had consented to the separation and this finding that appellant had not so consented. Having found that the corroborative elements which are present substantiate appellant's testimony, it is harmonious to hold that appellee had a fixed intent to extinguish her marriage by forcing him to live apart from her.

■ So, too, when defendant in the present case refused to cohabit with her husband and embarked upon a

course of conduct which compelled her husband to take up a new residence she became the deserter when the husband left on October 1, 1963; and in order to correct this desertion it became incumbent upon her to make efforts to resume the marital relationship. Her intention to abandon the marriage relationship remained fixed and firm even up until the time of trial. The rule of constructive desertion does not apply in this case for this separation was without the consent of the plaintiff and therefore he was not the deserter but the deserted.

The trial court heard the evidence and saw the witnesses; it was its duty to make the necessary determination of facts; and its findings are presumed to be correct. In re Estate of Wolfner, 58 Ill App2d 423, 207 NE2d 724. The evidence was ample to support the findings of the trial court; and it is not for us to substitute our findings for those of the court below unless such findings are clearly and manifestly against the weight of the evidence. Stevens v. Fanning, 59 Ill App2d 285, 294, 295, 207 NE2d 136. Such is not the circumstance in the case at bar.

For the foregoing reasons the decree of the trial court is affirmed.

Decree affirmed.

GOLDENHERSH and EBERSPACHER, JJ., concur.