CARRIE DECKER

*v.*

WILLIAM DECKER.

*Opinion filed December 18, 1901.*

1. DIVORCE—*section 10 of Divorce act considered.* Section 10 of the Divorce act, which provides that no divorce shall be decreed if it appears to the satisfaction of the court that the injury complained of was done by collusion of the parties or with the consent of the complainant, or that both parties have been guilty of adultery, merely makes imperative what was formerly a matter of discretion with the chancellor.

2. SAME—*adultery is a good recriminatory defense to charges of cruelty.* A charge of adultery by the wife may be set up by the husband as a recriminatory defense in his answer to her bill for a divorce on the ground of extreme and repeated cruelty, and if such charge is proven it is a complete bar to complainant's right to a decree.

*Decker v. Decker,* 95 Ill. App. 655, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Ford county; the Hon. JOHN H. MOFFETT, Judge, presiding.

SCHNEIDER & SCHNEIDER, and A. L. PHILLIPS, for appellant.

CLOUD, MOFFETT & THOMPSON, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The parties hereto are husband and wife. The wife, the appellant, filed a bill for divorce against her husband, the appellee, in which she charged that he, at the time of their marriage, was "naturally impotent and incapable to perform the act of copulation," and unable to cause her to become pregnant and bear children, etc., and that since the marriage he has been guilty of repeated acts of extreme cruelty toward her. The allegations of the bill were denied by the answer filed thereto. The appellant stipulated she would rely wholly and alone upon the charge of extreme and repeated cruelty, and that issue was heard before and submitted to a jury for decision. The verdict was adverse to the contention of the wife. Subsequently a re-trial was awarded, and the husband was granted leave to file an amended answer. The amended answer denied that complainant had always conducted herself toward him as a chaste, dutiful and affectionate wife, as alleged in the bill; denied that he had in any manner disregarded his marriage vows and obligations, and also all and singular the charges of cruelty contained in her bill, and averred that the complainant deserted and abandoned him and that cohabitation between them had ceased, and she gave herself over to adulterous intercourse with other men, and became pregnant with child by reason of such adulterous practices, and had given birth to such child since the trial of the cause at a former term. The answer alleged the defendant had not been guilty of any violation of his marriage vows, and that the complainant was not acting in good faith in filing the bill. The appellant excepted to the answer on the ground that the defendant could not avail of the charge of adultery in recriminatory defense to the charges of extreme and repeated cruelty. The court overruled the exceptions. The complainant elected to abide her pleadings, the bill was dismissed, and this appeal

was perfected to test the correctness of the ruling of the chancellor.

The insistence of the appellant is that adultery can not be set up, by way of recrimination, as a defense to charges of extreme and repeated cruelty and impotency, but only when the charge is that of adultery. This contention is chiefly based upon the construction given by counsel to section 10 of chapter 40 of the Revised Statutes, entitled "Divorce." The section reads as follows: "If it shall appear, to the satisfaction of the court, that the injury complained of was occasioned by collusion of the parties, or done with the assent of the complainant * * * thereto, or that both parties have been guilty of adultery, when adultery is the ground of complaint, then no divorce shall be decreed." Counsel for appellant construe this section to declare that adultery can only be pleaded in answer as a recriminatory defense to a charge of adultery in the bill, and argue that if it had been the legislative intent that adultery should be permitted to be pleaded in answer to the other statutory grounds entitling a complainant to a divorce, this intention would have been expressed in this section of the statute.

Counsel are in error as to the purpose or office of the provisions of said section 10. The section was not enacted for the purpose of controlling or directing the course of the pleadings or the formation of issues in a proceeding for divorce. Upon the contrary, it has relation to the power which is vested in the chancellor to take action in a divorce proceeding on grounds entirely without and beyond the issues made by the parties. A proceeding for the dissolution of the marriage relation involves interests other than those of the husband and wife who are the parties complainant and defendant. The separation of husband and wife by judicial decree concerns vitally the children, if any, of the discordant couple, and affects, in a general way, the home life and

domestic relations of the people, the public morals, the prevailing system of social order, and, in a greater or lesser degree, the welfare of every citizen. These interests are not represented by either of the parties to a divorce proceeding, but the law has not left them unprotected. It is within the power of the chancellor of whom a decree of divorce is asked to stand as a representative of the public, and, in a proper case, to refuse to grant the decree though the grounds of such refusal be without the issues made by the pleadings of the parties.

The conclusions drawn from the authorities on the subject by the author of the article on "Divorce" in the American and English Encyclopedia of Law (2d ed. vol. 9, pp. 728, 729,) is expressed in these words: "The State is interested in the preservation of the marriage relation, since this relation is promotive of morality and inures to the perpetuation of its citizens. * * * Since, as citizens of the State, the relatives and children of the parties have an interest in the marriage but cannot be protected, as they cannot become parties to a divorce suit, the interest of such persons is said to be represented by the court. In some States the court is relieved of such anomalous position by statutes authorizing the appearance of a prosecuting attorney or other officer to represent the State. Thus, a suit for divorce is not a suit between two parties, but is a triangular proceeding, in which the State is an adverse party, as the State has an interest in all suits for divorce. * * * The court, as representative of the State, is not bound by the pleadings of the parties, but may, on its own motion, examine witnesses as to suspicious conduct showing recrimination, collusion or condonation, although the defendant has not alleged such defenses." See, also, 2 Bishop on Marriage and Divorce, chap. 16.

The General Assembly of our State enacted what was intended to be a complete code on the subject of divorce, and having in the first section thereof authorized the

dissolution of the marriage relation for certain causes therein specified, incorporated said section 10 now under consideration in the enactment, in view of the power of the chancellor, as the representative of the rights and interests of the general public existing in divorce cases, to go beyond the pleadings of the husband and wife and render such decree as should be proper for the preservation of such rights and interests of the public. This section makes it the imperative duty of the chancellor to refuse to dissolve the marriage relation in all cases where it shall satisfactorily appear that the injurious act or acts relied upon to authorize the decree of divorce was or were occasioned by the collusion of the parties, or with the assent of the party so complaining, for the purpose of obtaining a divorce, or by the consent of such party, or where adultery is charged and both parties were shown to have been guilty of adultery. In the absence of the section ample power and authority resided in the chancellor to refuse to grant a divorce for any or all of the reasons or grounds specified in section 10, but whether he should do so or not was within his judicial judgment and discretion, or his conscience, as it is most frequently called. The enactment of the section added nothing to the authority of the chancellor, but operated to make it his imperative duty to do that which, without the provisions of the section, he had ample power to do. The pleadings of the parties, or the issues they may see fit to make, are wholly inconsequential, so far as the exercise of this power of the chancellor is concerned.

If, in a divorce proceeding where the complaining husband or wife seeks the dissolution of the marriage tie on the ground his or her consort has been guilty of adultery, it is disclosed to the chancellor that the complainant has been guilty of the same violation of the marriage obligation, the chancellor, as the representative of the public interest and the welfare and purity of society, must, in obedience to the command of said sec-

tion 10 of the Divorce act, refuse to grant a decree of divorce. In this respect section 10 is a declaration of a fixed public policy that the benefit of the statutory provisions authorizing decrees of divorce shall not be extended by the courts to cases where both the husband and wife have committed the offense of adultery, but that those who had each so offended against the marriage relation should be dismissed from the court and left to themselves as husband and wife. But that is not the question presented by this record. Adultery is not to be answered for by the appellee. On the contrary, it is averred by the complainant (the appellant) that the defendant (the appellee) is by nature physically incapable of performing the act of cohabitation, and a decree is asked for that reason, and also for the further alleged reason that he has been guilty of acts of extreme and repeated cruelty to the complainant. Is it a ground of exception to appellee's answer to these charges that the answer avers the complainant in the bill has committed adultery, in violation of her marriage obligations and duty? The contention of counsel for appellant is, adultery is a good recriminatory defense only when the charge is adultery, and that the defendant in the case at bar, the charge being impotency and extreme and repeated cruelty, should have filed a cross-bill if he desired to charge his wife with adultery. If he had filed a cross-bill, and upon a hearing the evidence proved the truth of the charge of cruelty made by the wife in her original bill and also that of the husband in the cross-bill, one of the questions presented in the decision of the case would be that arising out of the authority and duty of the chancellor to act, as the representative of the public and for the protection of the welfare and morality of society, whether the parties should be divorced or be left in the condition in which their wrongdoing had brought them. If the chancellor should find the charges of extreme and repeated cruelty set forth in the bill and the charge of

adultery made in the cross-bill to be true, could he ren-
der a decree for the wife, the appellant? How could the
court determine, when each party had been so proven to
be guilty of a breach of the marriage duty, which had
the better right to apply for a divorce? It is well set-
tled, the complainant, who asks a divorce on the ground
of extreme and repeated cruelty, should be denied a de-
cree if it appear she has been guilty of adultery. 2 Bishop
on Marriage and Divorce, secs. 352, 355, 360; Stewart
on Marriage and Divorce, sec. 514; Brown on Divorce,
sec. 84; 9 Am. & Eng. Ency. of Law, (2d ed.) p. 819.

As we have seen, it would be within the power of the
chancellor, acting as the representative of the people, to
refuse the wife a decree of divorce if it appeared in the
evidence she had committed adultery, though the plead-
ings presented no such issue. As said by Mr. Bishop
(sec. 314): "A cause [divorce] is never concluded against
the judge, and the court may, and to satisfy its con-
science sometimes does, of its own motion, go into the
inquiry of matters not involved in the pleadings." Is it
not, then, aside from all question of defense by recrimi-
nation, entirely proper for a defendant in a divorce pro-
ceeding to disclose in his answer any matter that it is
proper for the chancellor to consider in his capacity as
the representative of the public welfare and the morals
of society? It is not the policy of the law to favor di-
vorces or to encourage applications for the dissolution
of the marriage relation. Why, therefore, should it be
declared that a husband, defendant to a bill for divorce,
should be denied the right to disclose in his answer that
the wife had been guilty of adultery, but should be re-
quired to make such charge the basis of a cross-bill for
divorce, though he does not want to sever the marriage
tie? Such disclosure in an answer would but advise the
court as to a matter it had full power to act upon if dis-
closed on the hearing, though not brought to its notice
by the pleadings, and, in addition thereto, would en-

lighten the complainant and the better enable her to present the proof necessary to satisfy the conscience of the court that she had not been guilty of such a breach of her wifely duty.

It has been held in *Neagle* v. *Neagle*, 12 Mo. 53, and perhaps in the courts of other jurisdictions, that the court cannot distinguish between matrimonial offenses to which the law attaches the same consequences, and any infraction of the marriage duty which will entitle the injured party to a divorce may be pleaded as a recriminatory defense to a charge of the violation of any other of the marriage obligations which would justify a bill for divorce. Without accepting or rejecting this as the true doctrine, for the reason the question whether every and any ground of divorce may constitute a recriminatory defense to every other ground is not raised by the record, but only the question whether adultery is a good recriminatory defense to a charge of extreme and repeated cruelty, we hold the charge of adultery is a good recriminatory defense to the charge of cruelty in the bill filed by the appellant. It does not follow that each of the grounds specified in the statute for which a divorce may be granted is of equal gravity. From the standpoint of morality, adultery is the more serious of any of the statutory grounds for divorce. The effect produced by adultery, when committed by the wife, may be to introduce into the family circle a spurious offspring and a false heir to divide and share in the patrimony of those of the true blood. Such grave consequences do not attend the other offenses against the marital relation, which affect only the injured party as an individual. Adultery creates a stronger distrust of the affections, and from it arises a greater fear of final total alienation of love of husband for wife or wife for husband. In the same proportion that it shatters and destroys the confidence and affection of husband and wife in a higher degree than any other wrong committed by either, it has the greater

tendency to disrupt the marriage relation. It is not in the human heart to. so easily forget and forgive it as other delinquencies. It tends to degrade the guilty party and the party injured more greatly in the eyes of mutual friends than other marital wrongs. Public opinion rarely justifies the condonation of the adultery of the wife, and never so readily forgives the condonation as it does that of other marital offenses, and every wife is conscious her social standing will be unpleasantly affected by condonation, on her part, of the adultery of her husband, to a much greater degree than would follow the forgiveness of other violations of the marriage vows. To the same extent that adultery tends more largely to prevent the reconciliation of husband and wife who have become estranged, and to produce permanent destruction of family ties than other acts for which final legal separation may be had, it must be regarded as the greater offense against the marriage relation and the public welfare. These are among the reasons which have caused adultery to become universally recognized among civilized mankind as an offense of more gravity than other violations of the marriage obligations. In a legal aspect, adultery has long been regarded and considered as a wrong to society and the marriage relation of more consequence than other offenses for which divorces or legal separations may be granted. In *Bast* v. *Bast*, 82 Ill. 584, we said, in substance, that neither a charge of desertion, cruelty or drunkenness could exonerate the wife from "the more serious charge" of adultery. In *Stiles* v. *Stiles*, 167 Ill. 576, we said it is well settled in this State that extreme and repeated cruelty is not sufficient as a recriminatory defense to a charge of adultery. Though a decree for divorce rendered on any statutory ground will bar the dower of the guilty husband or wife, the mere fact that the surviving husband or wife has been guilty of any of such statutory offenses against the marriage relation other than that of adultery will have no effect to deprive

such offender of dower. Adultery accompanied by elope-
ment, however, operates to bar dower by the express
provisions of section 15 of chapter 41 of our statutes, en-
titled "Dower," unless condoned, and no decree of divorce
is necessary to effect such forfeiture. Such, also, was
the rule at the common law. (2 Blackstone, p. 136.) The
doctrine of the ecclesiastical law was, that one who had
committed adultery was not entitled to any relief, and
that no offense would bar a charge of adultery except
adultery on the part of the complainant. Nelson on Di-
vorce, sec. 430.

Whilst there is much conflict in judicial decisions upon
the question whether every legal cause of divorce may
be availed of as a good recriminatory defense against
each and every other of such causes, we are not aware
that it has ever been held that adultery is not an effec-
tual bar in recrimination in any instance or against any
cause for divorce. In 9 American and English Encyclo-
pedia of Law (2d ed. p. 819) it is said: "It is well estab-
lished that adultery of the plaintiff is a defense in recrim-
ination in all cases, regardless of the cause for divorce
alleged by the plaintiff or the kind of relief prayed for,
whether absolute divorce, a decree *a·mensa*, or alimony
without divorce."

The charge in the answer in the case at bar that the
appellant had committed adultery was properly held by
the chancellor to present; if true, an effectual bar to the
prayer of the appellant that a decree of divorce should
be awarded to her. The answer was not obnoxious to
the exceptions presented against it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*