Dorothy Anne Nusser, Appellant, v. Alvin Francis Nusser, Appellee.

Alvin Francis Nusser, Cross-Appellee, v. Dorothy Anne Nusser, Cross-Appellant.

**Gen. No. 46,312.**

First District, Second Division.

February 15, 1955.

Released for publication March 7, 1955.

Dent, Hampton & Doten, of Chicago, for appellant.

Harold W. Wynkoop, of Chicago, for appellee.

MR. JUSTICE ROBSON delivered the opinion of the court.

Plaintiff filed her complaint for separate maintenance against her husband, the defendant, alleging abandonment of the plaintiff and the two minor children of the parties. Defendant filed his counterclaim for divorce on the ground of desertion. The court after trial found for the defendant and on June 4, 1953, granted a decree of divorce for desertion on his counterclaim. Support allowance was made to the plaintiff for herself and the minor children. Thereafter, plaintiff filed a written motion with supporting affidavits to set aside the decree for the purpose of having further evidence taken or, in the alternative, for rehearing. Subsequently, an additional motion was made with supporting affidavits for leave to amend the original motion and to file an amended or supplemental com-

plaint charging the defendant with adultery, for leave to change the prayer of the complaint to a prayer for divorce, to introduce newly discovered evidence in support thereof or, in the alternative, to present such newly discovered evidence in support of the original complaint. The court denied the motions after hearing. Plaintiff appeals from the decree and the order denying her motions.

■■■■ The principal issues we must consider are whether the trial court erred in denying plaintiff's request for continuance upon her becoming ill during the trial and in denying her motion to set aside the decree and reopen the case. In considering these issues we keep in mind the well-settled law in Illinois that in divorce actions the State occupies the position of a third party. The State has an interest in maintaining the integrity and permanency of the marriage relation. (Ollman v. Ollman, 396 Ill. 176; Floberg v. Floberg, 358 Ill. 626.) Divorce vitally concerns the minor children, if any, of the divorced couple. It affects the home life and domestic relations of the people, the public morals, the prevailing system of social order and the welfare of every citizen. These interests are not represented by either of the parties to a divorce proceeding. This protection is left to the court, as the representative of the State, and in a proper case it may refuse to grant the decree, though the grounds of such refusal be outside the issues made by the pleadings of the parties. (Decker v. Decker, 193 Ill. 285.)

Our review of the record reveals that the parties married in this State in 1935 and there are two minor children of the marriage. Their early married life was itinerant. At the time of their separation he worked for the State of Illinois. Plaintiff was employed during most of the marriage as a clerk and assistant cashier in bakeries. During all their married life there were differences, conflicts of personality, etc., and, apparently, family interference. The case was first called for

trial by the assignment judge on February 11, 1953, and assigned for trial. Plaintiff became ill during the course of a discussion in the judge's chambers and the trial was postponed until February 18. Plaintiff, since November 1952, had been under the care of Doctors Nelson M. Percy and Carl A. Hedberg who at that time diagnosed a postoperative ventral hernia following a hysterectomy in April 1951, and correction of a postoperative incisional hernia in October 1951. On February 16 plaintiff saw Dr. Hedberg who advised immediate hospitalization. She was admitted to the hospital on February 18, 1953, and surgery was performed. On February 20, 1953, plaintiff's attorney presented an affidavit by Dr. Hedberg stating the facts as to plaintiff's condition and the trial judge sent the case back to the assignment judge. On March 23, 1953, the case was again on the call. A second affidavit of Dr. Hedberg was presented. The doctor stated that plaintiff had last been released from the hospital on March 8 and in his opinion her recovery had not progressed to a point where it would be safe for her to attend court hearings before June 15, 1953. The assignment judge continued the case to April 17, 1953, and stated the case would proceed to trial on that date or be dismissed for want of prosecution. On March 31, 1953, plaintiff was injured in a fall down a flight of stairs while recuperating at her sister's home and was hospitalized from April 2 until April 10, 1953. When called again the case was assigned to a trial judge over plaintiff's objection and on April 24, 1953, the trial began.

During the trial plaintiff's physical condition became such that she was unable to attend the last two days of the trial. On April 29, plaintiff was in the emergency room in the county building and on April 30 she was not able to come to the courthouse. Plaintiff's counsel asked for a continuance until a later period because of her condition and after counsel for defendant objected he suggested that the court appoint a physician to

examine the plaintiff. The court stated it would give the plaintiff until the following morning to appear in court for the trial. Counsel for plaintiff informed the court that this brief postponement would not be sufficient and then proceeded with the rebuttal testimony that he had available. Proofs were closed and the case argued the same day.

As to the issues, the defendant testified that during the six months prior to his leaving on February 27, 1951, plaintiff had ordered him from the home fifteen or more times, was possessed of an uncontrollable temper, was quarrelsome, cursed and swore before him, and generally made his home life unbearable. On several occasions he was compelled to sleep on the living room couch and in two instances spent nights in the car. On January 26 or 27, 1951, she ordered him to leave. He asked to be allowed to remain until February 27, which was an election date, because of his job as a precinct captain. On February 27 she renewed her demand and he left. On January 28 he made application for a room at the Y.M.C.A. He moved there on February 27. He stated that he hoped that after an absence of about two weeks his wife would relent and allow him to return home. He returned to the home a number of times. On each occasion he requested his wife to allow him to return and resume their married life. She always refused. On the first of April plaintiff changed the locks on the door. Thereafter he telephoned her many times and asked if he could come home. Several witnesses corroborated defendant's testimony in certain respects.

Plaintiff in substance testified that not until February 14 was the question of defendant's leaving brought up and then by the defendant. Defendant never slept in any other room than their bedroom. He slept with her in the same bed throughout January and February —even on the very night before he left. This last de-

542

fendant did not deny. She testified that the locks were changed in April shortly before she left for the hospital to insure that nothing would be taken during her absence. Plaintiff's testimony was corroborated in certain respects by several witnesses.

Plaintiff further testified that the Y.M.C.A. to which defendant moved was across the street from an apartment where lived a Lurene Johnson. The latter was employed at the Chicago State hospital where defendant had been employed at the time he left plaintiff. When he left he owned a 1950 Chevrolet sedan. On May 25, 1951, defendant assigned the certificate of title for the Chevrolet to the Logan Buick Company in connection with the purchase of a 1951 Buick sedan in the name of Lurene Johnson. It was necessary to finance a part of the purchase price. The customer's financing statement lists Lurene Johnson as the purchaser, states her income per month, "Salary or wages," as $240, and gives Alvin Nusser's address, 2172 Eastwood avenue, and income per month, $452.. The service record of the Buick agency, which was introduced at the trial, showed that in May of 1951 the mileage of the car was 1,082; in August of 1951, 3,600. The car was not serviced again until October when the mileage was 9,386. Defendant after many evasive answers admitted he went to Mexico in 1951, but could not state in what kind of a car. The trial court prevented further examination as to Lurene Johnson by sustaining defendant's objection to it. Plaintiff's offer to prove that in 1951 Miss Johnson did not drive and that she did not make application for a driver's license until August 28, 1952, was refused. There was also testimony of various witnesses who had seen the defendant in Miss Johnson's company on numerous occasions. When he was interrogated about the trade-in of the car and his relations with Lurene Johnson his statements were evasive and he answered reluctantly.

■ As to the ground on which the decree was granted, it was early stated and has since been followed by many cases in this State that the "reasonable cause" which justifies a husband or wife to desert or abandon the other must be such as would entitle the person abandoning the other to a divorce. Fritz v. Fritz, 138 Ill. 436; Scheuer v. Scheuer, 247 Ill. App. 463; Swan v. Swan, 331 Ill. App. 295.

Examining the record before us and this statement of the law, it is evident that if we exclude the testimony of the defendant and his witnesses as to his offer to return, there would have been no basis for the court granting the defendant a divorce on the ground of desertion. This testimony as to the offer to return was denied by the plaintiff and certain of her witnesses.

■ We are at all times reluctant to disturb the findings of the trial judge who saw and heard the witnesses, on the ground that they are against the manifest weight of the evidence. However, we do not pass on this contention in view of our ultimate decision.

By plaintiff's affidavit and by the affidavits of numerous others submitted in support of her original motion of July 2, 1953, to set aside the decree, plaintiff stated her medical and trial histories and showed the existence of substantial evidence to refute the testimony heard in defendant's behalf during plaintiff's illness and absence at the trial and her inability to advise her attorney. This motion was not immediately passed on by the trial court.

On August 26, plaintiff filed a further motion asking leave to amend her original motion, to file a supplemental complaint charging the defendant with adultery and changing the prayer of her complaint to a prayer for divorce and to introduce newly discovered evidence pertaining thereto. Attached to the motion was a letter received from the Ministry of the Interior of Mexico, which reads as follows:

544

"In reply to your valued communication of last June 3rd, I wish to inform you that there exists records to the effect that Mr. and Mrs. Alvin and Lurene Nusser, both citizens of the United States, entered this country in the capacity of tourists, on the date of Sept. 23, 1951, via Nuevo Laredo, Tamps."

█ When we consider the content of these two motions in connection with the background of the circumstances under which the plaintiff was forced to trial, her absence from court during the last two days of trial, it is evident that there is merit to them. We have indicated that the question of whether plaintiff was guilty of desertion on the basis of the record before us was indeed a close one. The testimony of the various rebuttal witnesses might or could have changed the court's ultimate decision. The letter relative to the defendant's trip to Mexico, about which he was so reluctant to testify, ties in with the increase of slightly less than 6,000 in mileage between August and October on the automobile owned by Lurene Johnson as shown by the service record of the Buick agency. This might or could shed new light on the reason for defendant's leaving home.

█ Applying the law heretofore stated, our courts must always be alert and diligent in assuming their responsibility on behalf of the State to protect the marriage. We are well aware that because of the present crowded condition of the trial docket a judge is under constant pressure to try and dispose of cases. He might under such circumstances fail to consider the different role that he must play in the trial of a divorce action in contrast to the ordinary civil proceeding. Acts of the court which would not be considered an abuse of discretion in civil cases may, in divorce, where the trial judge assumes a different role, well be considered an abuse. This is clearly the situation we find in the instant case. Under all the circumstances, we are

545

of the opinion that the trial court should have granted plaintiff's motion to set aside the decree and reopen the case.

The decree of the trial court awarding defendant a divorce on his counterclaim is reversed and the cause remanded with directions to allow plaintiff's motion as amended for a new trial of the issues.

Decree reversed and cause remanded with directions.

McCORMICK, P. J. and SCHWARTZ, J., concur.