## Adelia Lovina Williams, Plaintiff-Appellee, v. Howard Green Williams, Defendant-Appellant.

### Gen. No. 61–O–27.

Fourth District.

March 21, 1962.

Wineland & Todd, of Flora, for appellant.

Burnside & Dees, of Vandalia, for appellee.

HOFFMAN, PRESIDING JUSTICE.

This case involves an appeal from a decree of divorce awarded the plaintiff wife on the grounds of desertion. The decree awarded the plaintiff a divorce, ordered the defendant to pay plaintiff her attorney fees in the sum of $1,000 and, in addition, vested in her a homestead estate in the domicile which was owned by the defendant. The decree further ordered defendant to pay all taxes assessed against the homestead and to make all necessary and reasonable repairs thereto. Further, it provided that the defendant was to pay plaintiff the sum of $200 a month as alimony and the same was made a lien upon the real estate.

The defendant argued in the trial court and strongly urges in this court that the decree is contrary to the manifest weight of the evidence. In particular, he contends that the evidence falls far short of establishing desertion under our law.

The parties here were married in 1917. At the time of the hearing the husband was almost 64 years of age and the wife was 67. They had lived together in the same house in Iola for better than 30 years, and had raised two children. During the course of their marriage, both had accumulated property, by savings, hard work and inheritance, so that at the time of the hearing the husband held farm land valued between $70,000 and $131,000, while the wife had bank accounts totalling approximately $5,000. There is no evidence that the husband worked, but the wife was head cook at the grade school cafeteria where she earned $115 a month, and, in addition, was the recipient of a monthly social security check in the sum of $40.40.

Prior to December of 1958 the parties lived in the same house, an old dilapidated structure, which was

without a furnace or running water, and had rotting floors and sills. For 15 to 20 years prior to this time, these people, though living in the same house, had no sexual relations, slept in separate bedrooms, ate their meals separately (he doing his own cooking) and they scarcely, if ever, talked or communicated in any way with the other. Up and until the past 12 years plaintiff wrote checks upon the husband's bank account and had all her material needs furnished to her. However, for the past 6 years, at least, the husband made no provision for the wife, except to pay the fuel and electric bills in the home which was owned by him. She has been working at the school cafeteria to support herself otherwise.

On December 4 or 5, 1958 the husband went to Florida. He testified that this was the second time he had done this and that he went both times pursuant to his doctor's orders. As on the previous occasion, he neither took nor offered to take his wife with him nor did he write to her from Florida. She learned where he was only by talking with her neighbors and her grandson. He spent the winter in Florida and returned to the home in Iola in March, 1959. All of the time he was in Florida he paid the fuel and electric bills at the home, and continued to do so even after this suit was filed. When the defendant returned in March, he lived in the home with plaintiff, exactly as he had previously, for about one week, and then moved into a trailer out on one of his farms. He had purchased the trailer in Florida. From that time on, defendant has lived alone in the trailer, only returning to the home to get tools and personal belongings.

On December 23, 1959 the plaintiff filed this suit for divorce, alleging as her grounds the desertion of the defendant, commencing upon December 5, 1958.

With regard to the alleged separation on or about December 5, 1958, there is very little evidence in the

record. However, the following testimony of the plaintiff is most significant: When she learned that he had gone to Florida, she testified that "I didn't do anything about it. . . . It didn't occur to me that it was unusual that he did go to Florida. . . . I wasn't surprised. . . ." Then, the following questions and answers appear:

"Q. Was it against your will that he went this time?

"A. I didn't care.

"Q. You didn't care, did you? It didn't make any difference to you, did it?

"A. Yes.

"Q. Well, did you care or didn't you care?

"A. I cared.

"Q. You did care. How much did you care?

"A. I thought I was entitled to some of the money he was spending. That was not the only reason. I hated to have a broken home. The home was broken when he left me in December of 1958, the 2nd.

It was broken for a long time before that.

"Q. So nothing actually happened in December of 1958 except that he went to Florida. Is that true?

"A. (No answer.)"

Insofar as the husband is concerned, he testified that he moved into the trailer upon his return from Florida because "I just felt safer in it out there and my bedroom didn't have any heat in it. I was afflicted with arthritis and I couldn't stand cold and also, I just didn't want to live with my wife at that time."

█ The only question in the case is whether or not the facts set forth above constitute desertion, under our statute, on the part of the husband, sufficient to authorize the decree of divorce entered.

Our statute provides that a divorce based upon desertion may be granted where either party "has wilfully deserted or absented himself or herself from the husband or wife, without any reasonable cause, for

the space of one year." (Ill Rev Stats 1961, c 40, § 1.) The last pronouncement of the Supreme Court upon the scope of this statute is found in Lemon v. Lemon, 14 Ill2d 15, 150 NE2d 608, in which case Mr. Justice Daily summarized the rule as follows: "The statute contemplates much more than the mere separation of husband and wife by mutual consent or acquiescence in that it requires an actual abandonment and abnegation of all marital relationships with an intent not to return and without legal justification or consent of the other spouse."

Elsewhere it has been stated that, to be guilty of desertion, a spouse must intentionally bring the cohabitation to an end by his (her) misconduct, against the will of the other and without encouragement, invitation or the consent of the other. (See 27A CJS divorce, sec 36(3).)

Our courts have repeatedly held that the marital relationship is more than a sexual arrangement and that cohabitation involves more than sexual intercourse. It has been said that cohabitation means the living together as husband and wife (Teal v. Teal, 324 Ill 207, 220, 155 NE 28; Rasgaitis v. Rasgaitis, 347 Ill App 477, 480, 107 NE2d 273, 275), but does not necessarily require living under the same roof (Bouvier's Law Dic, 3rd Rev Ed, vol 1, p 519). And in the early case of Fritz v. Fritz, 138 Ill 436, 28 NE 1058, which our courts constantly cite, the Supreme Court stated that there are many important marital rights and duties and that by marriage the parties assume obligations to each other and to society which center upon companionship with the other and the protection of the home.

 The marital obligation is the obligation to live, conjugally, with the other, to love and support, protect and defend the other. It is a composite of many responsibilities and duties; and it is only the

failure, wilfully, and over the objection of the other, to perform all of these responsibilities and duties which will condone a decree for divorce. A partial failure, or a consented-to failure will not suffice. Nor may there be a mutual revocation or agreement to dissolve. The spouse alleging desertion must affirmatively prove, by a greater preponderance of the evidence, that the offending spouse has abnegated all of the marital obligations, wilfully and without the consent of the other. Absent such proof, a divorce may not be granted.

What was the act of desertion of which the plaintiff complains in this case? What happened in December, 1958? Did the defendant at that time wilfully renounce every marital duty he had and forever sever his relationship with the plaintiff? Or, did he just go to Florida? Has he abnegated all of his marital obligations when he continues to provide a home with heat and light for the plaintiff? But if this act of December, 1958 was the final and consummative act which broke the last thread of obligation between husband and wife, who was responsible for the nullification of the many other marital obligations imposed upon both of these people? Who brought the sexual cohabitation to an end? Who was responsible for their not eating together, or sleeping together, or talking with each other? Was this termination of companionship all the husband's fault? Nowhere does the record reveal the answers to these questions, or even hint at them. Nowhere does the record establish the fault more one way than the other. "Where the plaintiff in a divorce proceeding has either expressly or impliedly consented to the original separation and its continuance, and has not revoked such consent, she is not entitled to a divorce for desertion." McCartney v. McCartney, 343 Ill App 533, 538, 99 NE2d 632, 635. "Before an absence may be made the basis for a

215

divorce action it must be clear that it is against the will of the plaintiff." Karman v. Karman, 24 Ill App 2d 123, 127, 164 NE2d 521, 523.

This has been the law enunciated through many of our cases. In Chatterton v. Chatterton, 231 Ill 449, 83 NE 161, the plaintiff and defendant were married in 1868 and resided together until 1899. Thereafter they did not live together. The wife testified that she and her husband lived together until 4 years prior to the May of the year in which she was testifying, that ever since that time they had not lived together and she had last heard her husband was in California. She further testified that her husband did not support her since leaving. The trial court entered a decree of divorce on default of the defendant. The defendant died and his executor sued out a writ of error to review the divorce suit. The Appellate Court reversed the decree of divorce and the Supreme Court affirmed the reversal. It was pointed out that there was no evidence to show the reason or with what intention the husband had left and the court said on page 453: "In other words, there is no proof that the desertion was willful or that it was without any reasonable cause, as required by the statute."

In Lemon v. Lemon, supra, the Supreme Court, in reversing a decree of divorce entered in favor of the defendant husband, pointed out that the husband wasn't entitled to a divorce because the records showed that during the period of time for which desertion was claimed the parties shared the same automobile, the defendant took the children to school, defendant completely supported his wife and children and he had free access to the home; that he was at the house at least once a day; that he and his wife went out socially and that the final separation occurred upon the most amiable of terms. The court concluded that it was clear the defendant had no ob-

216

jection to the marital circumstances but by his acts he had acquiesced in their continuance.

In McCartney v. McCartney, supra, the father went to Wisconsin to make a home for the son who was attending the university. The wife contended that his leaving was desertion. The court points out that where the plaintiff expressly and impliedly consents to the original separation and its continuance and has not revoked such consent, she is not entitled to a divorce for desertion.

In Lindeman v. Lindeman, 337 Ill App 261, 85 NE 2d 847, a decree of divorce was entered which was reversed by the Appellate Court. The court said the issue in the case was whether or not desertion could occur while the husband and wife lived in the same home. The court pointed out that, as was indicated in Carter v. Carter, 62 Ill 439, desertion was to be treated the same as absence. Again the court said that desertion referred to the abnegation of all marital duties, not of one alone.

In Maxwell v. Maxwell, 333 Ill App 625, 78 NE2d 140, a decree of divorce obtained by a husband was reversed. The court held that neither the husband nor the wife were entitled to a divorce on desertion where the alleged desertion took place with the consent of the other spouse. The court said the wife could not be guilty of desertion as long as she continued to make her home with her parents if she went there in the first instance not against the will of the husband and if, while there, the husband has not provided a home for her any place else. Neither was he a deserter if he lived at his parents with his wife's consent and if she never objected to him living separate and apart. Thus, concluded the court, neither was a deserter within the meaning of the statute.

In view of the above, we hold that the plaintiff wife here has failed to meet the burden of proof

217

which our law casts upon her. It is clear to us that the manifest weight of the evidence does not support the finding that the defendant wilfully deserted the plaintiff. Accordingly, the decree must be reversed.

Reversed.

CULBERTSON and SCHEINEMAN, JJ., concur.