**Lucille A. Foster, Plaintiff and Counterdefendant-Appellant, v. George E. Foster, Defendant and Counterplaintiff-Appellee.**

Gen. No. 51,938.

First District, Fourth Division.

May 7, 1969.

Fischer, Guy, Jacobson & Pauker, of Chicago (David H. Pauker and Stanley Grosshandler, of counsel), for appellant.

Milroy Blowitz, Harold A. Liebenson, and Edward G. Raszus, of Chicago (Harold A. Liebenson and Edward G. Raszus, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Plaintiff, Lucille A. Foster, appeals from a decree which dismissed her complaint for separate maintenance and awarded a divorce to her husband, George E. Foster. The wife filed suit for separate maintenance on the ground of desertion, and the husband counterclaimed for divorce on the same grounds. The chancellor found the wife to be the deserter, awarded the divorce to the husband, and her appeal follows.

The issue to be determined is whether the husband had reasonable cause for leaving the marital home so as to constitute the wife as the deserter, or whether by his departure he became the deserter. Certain facts are undisputed.

The parties were married on August 19, 1938, and became separated on February 20, 1965. From 1939 to the date of their separation they lived at 7917 South Yale, Chicago in a single-family residence jointly owned by them. At the time of trial, the wife still lived there, while the husband resided in an apartment at 5701 Sheridan Road, Chicago. The couple had no children. The wife was a schoolteacher throughout the marriage until she retired in 1961 at the age of 52 because of ill health. The husband was the president and sole shareholder of an engineering corporation specializing in electronic fabrication. The wife was an excellent housekeeper, did all the laundry and personally prepared the

husband's meals until the separation. The marriage was harmonious for many years, and the couple took yearly trips to Florida in the plane owned by the husband's company. The couple also went to Europe in 1962, and to Hawaii in 1963. The parties discontinued having sexual relations in the early part of 1961 and never resumed them. For several years prior to their separation, the parties quarreled about moving from their home. Although it was the wife who wished to remain in their home and the husband who wished to move, at one time without consulting her husband, the wife made a deposit on a cooperative apartment in another neighborhood. However the husband did not wish to become involved in such an ownership arrangement, and she received a refund.

On the morning of February 20, 1965, they breakfasted together. After the wife left to attend a luncheon, the husband took his clothing and moved into a room at the Sands Motel on the north side of Chicago. He had not told his wife of his intention to leave, and she first learned of it when upon her return she telephoned him at work to ask about his missing clothes. He returned the next day to get the remainder of his belongings, and she helped him carry some of the heavier material. In April, 1965, he moved from the motel to a 4-room apartment on Sheridan Road. The wife has never seen the apartment. After the husband left home, the wife wrote him several times asking him to return, and he believed that she wished him to return.

In addition to the above undisputed facts, the wife testified that difficulty in the marriage began to occur in 1960 when her health started to deteriorate. After that her husband spent more time at his plant, came home infrequently for dinner, talked to her less and shared few activities with her. In the early part of 1961, she refused once to engage in sexual relations with her husband because of a painful back ailment, but this refusal

did not anger her husband who was understanding about it and concerned about her health. She further testified that this back ailment continued for only two or three months, and that she then informed him that she was willing to resume relations, but that he refused. The wife also testified that for several years prior to the separation her husband talked about moving. Their neighborhood had changed racially and he said he was tired of the house. He never made a suggestion as to where they should move, and said that he was too busy when she asked about looking for another residence. She did not discover until several weeks after the separation that her husband was staying at the Sands Motel. She then learned from the clerk at the motel that he had moved to an apartment. Subsequently she asked her husband if she might see the apartment, but he said that it wasn't finished. She also testified that while she loved her home and was involved in many community activities in her neighborhood she would be willing to move to another area if the new residence had as much space as their present home. She did not believe that the four-room apartment in which her husband was living would be large enough for her furniture and pets.

The husband testified that his wife and he had discontinued having sexual relations in 1961 because of his wife's physical ailment. He wished her to go to a doctor, but because of her religion she refused to do so. For two or three years thereafter, he had requested that they resume relations but she declined. Then once she suggested having sexual relations, but he was caught by surprise and refused. Outside of that one occasion there was no other request on her part to resume any sexual life. He and his wife had quarreled about moving from their home for about eight years. In early 1964 they once walked over to look at town houses in Hyde Park, but even before considering it she insisted that they would never move from their home. During this

131

time he had also wished to move his factory to the north side. In August, 1964, they had a violent quarrel about that, and she was upset for days. At that time she said it was foolish to move the factory to the north side, that she would never move north with him, and that she would leave him if he moved the factory. When she learned that he had already signed the lease to move the factory, she did not leave him.

The husband further testified on direct examination that the day after he left home he informed his wife that he was staying at the Sands Motel and that she was welcome to join him. He also testified on direct examination that about a week after he moved from the motel to the apartment he informed his wife of the move and that she was welcome to join him. On cross-examination and under questioning by the judge, the husband testified that he had never invited his wife to join him at the motel or in the apartment, that he had never asked her to help him select an apartment, and that she asked to visit his apartment, but he refused.

■ Where a trial court has heard the evidence with its opportunity to see the witnesses, a reviewing court will not substitute its findings for those of the trial court unless such findings are manifestly against the weight of evidence. Gillespie v. Gillespie, 70 Ill App2d 38, 216 NE2d 462 (1966). However, where the record discloses a lack of evidence to sustain a decree, reviewing courts will not hesitate to reverse. Fowler v. Fowler, 315 Ill App 270, 42 NE2d 954 (1942).

We recognize that in finding that the wife was the deserter, the trial court accepted the testimony of the husband as true. In that light, this court shall examine his testimony to see if it sustains the decree.

■ It is well settled in Illinois that refusal of sexual relations by one party does not constitute desertion, since such a refusal is a violation of only one aspect of marital

life. Rather desertion "imports a cessation of cohabitation, a refusal to live together, which involves an abnegation of all the duties and obligations resulting from the marriage contract." Fritz v. Fritz, 138 Ill 436, 440, 28 NE 1058 (1891). See also Mathews v. Mathews, 227 Ill App 465 (1923); Lewand v. Lewand, 335 Ill App 573, 82 NE2d 364 (1948).

Accordingly, even accepting the husband's testimony that the wife refused to have sexual relations except for the one instance, this conduct of itself would not constitute desertion. It should also be noted that neither party testified as to any arguments over the wife's refusal to engage in sexual relations nor that any of their differences arose from the cessation of such relations. In fact, although the husband testified that he had frequently requested a resumption of a sex life, he also stated that the cessation was caused by the wife's physical ailments.

■ While the husband concedes that refusal of sexual intercourse of itself is not desertion, he urges that it be considered as a factor, along with the rule that the domicile of the husband is that of the wife, and her refusal, without justification, to accompany him to a new domicile constitutes desertion on her part. Kennedy v. Kennedy, 87 Ill 250 (1877); Karman v. Karman, 24 Ill App2d 123, 165 NE2d 521 (1960).

Although we recognize the above rule as valid and well settled, we find it inapplicable under the facts elicited from the husband. Without any warning or notice to his wife, he left home and moved into a motel room. Two months after that he leased an apartment. He never invited his wife to join him in either place. While staying at the motel he did not inform his wife that he was looking for an apartment. He did not tell her about the apartment until he had lived there a week. When she learned that he was living in an apartment and asked to visit it he refused. None of his conduct was

consistent with that of a man anxious to make a new home for his wife.

■ We appreciate the husband's desire to relocate his place of business and to have his residence close thereto. In view of his position with the corporation these were properly decisions for him to make. But he also had the obligation to give his wife the opportunity to share this move with him. Having departed home as he did and having concealed his moves even if only temporarily from her, he cannot now maintain that his wife deserted him by failing to move in with him without invitation when she learned of his whereabouts.

Nor can we find from the evidence offered by the husband that the wife's intention to live apart was fixed, so that it would have been futile for him to offer to establish a home or request that they move together to a new home. Bateman v. Bateman, 337 Ill App 7, 85 NE2d 196 (1949). Although he testified that for several years he and his wife had quarreled about his desire to move and her insistence that they not move, he referred to only two specific instances of such quarrels: early in 1964 when they looked at some townhouses and later in the same year when she said she would leave him if he moved his plant. These two instances would hardly qualify as proof of his wife's determination never to make a new home with him. Moreover her conduct in making a deposit on another apartment reveals that her desire to stay in their home was not so fixed that she would not have joined her husband if asked.

Cases cited by the husband as strongly supporting his position, Karman v. Karman, 24 Ill App2d 123, 164 NE2d 521 (1960), and Gillespie v. Gillespie, 70 Ill App2d 38, 216 NE2d 462 (1966), are clearly distinguishable from the instant case. In the Karman case, a husband aged 77 years and a wife aged 62 years were married for less than a month when she ordered him to leave. She had also refused to have sexual relations with him after

just 13 days of marriage. In the Gillespie case, the court found that the husband was entitled to a divorce on the grounds of desertion where he left home after his wife refused to have sexual relations with him, refused to cook his meals or clean his room and refused to talk to him. In each of these cases, the court properly found that while the husband physically departed from home, it was the wife who extinguished the marital relationship and was the actual deserter. That is not the evidence in the instant case.

A careful consideration of the record leads us to the conclusion that there was insufficient legal basis for the award of a decree of divorce to the husband on the grounds of desertion.

Since we find that the wife did not desert her husband, we must find that the parties are living separate and apart through no fault of hers, and that she is entitled to a decree of separate maintenance.

For the foregoing reasons, the decree is reversed and the cause is remanded with directions to enter a decree dismissing the counterclaim of George E. Foster for want of equity, granting a decree of separate maintenance to Lucille A. Foster and for further proceedings pursuant to law.

Decree reversed and cause remanded with directions.

DRUCKER, P. J. and STAMOS, J., concur.