HURLEY EDMOND, a/k/a E. D. HURLEY, a/k/a HURLEY ED, Plaintiff-Appellant, *v.* WILLIE EDMOND, Defendant-Appellee.

(No. 73-194; 

Fifth District—June 17, 1974.

Meyer and Meyer, of Belleville (Stanford S. Meyer, of counsel), for appellant.

McRoberts, Sheppard, McRoberts & Wimmer, P.C., of East St. Louis (Phillip A. Montalvo, of counsel), for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This case involves a suit for divorce filed by the plaintiff, Hurley Edmond, against Willie Edmond, his wife, based upon a charge of desertion. The circuit court of St. Clair County dismissed plaintiff's suit for divorce with prejudice for want of equity. It is from that judgment this appeal is taken.

The plaintiff-appellant, Hurley Edmond, and the defendant-appellee, Willie Edmond, were married on April 15, 1945, in the city of East St. Louis, Illinois. There were no children born of this marriage. On March 26, 1969, the defendant-appellee filed a complaint charging the plaintiff-appellant with physical cruelty and praying for divorce. Thereafter, the complaint was amended to pray for separate maintenance. In a hearing before the circuit court of St. Clair County, defendant-appellee's suit for separate maintenance was denied and dismissed with

prejudice for want of equity on September 16, 1969. On August 8, 1972, the plaintiff-appellant, Hurley Edmond, filed this suit for divorce charging that the defendant-appellee, Willie Edmond, had willfully deserted him on or about March 1, 1969. The cause was heard before a trial judge in the circuit court of St. Clair County, after an earlier demand for a jury trial was waived by the defendant-appellee. Upon an objection made by plaintiff's attorney, the trial judge limited testimony to those events surrounding the marriage relationship after September 16, 1969.

At trial the evidence showed that the parties had not lived together since September 16, 1969. According to the plaintiff, the defendant apparently gave no reason for leaving and told the plaintiff she didn't know if she would return. When questioned about his wife's illness, the plaintiff stated that she was a sick woman before she left him and was still sick on September 16, 1969, and thereafter. He testified that he didn't know she had a cancer operation, but that he did provide her with medical attention "if she favored him." He stated that he did not know that his wife's portion of his railroad pension would be stopped if the divorce were granted, but he seemed somewhat disturbed that she received any part of his pension.

When the defendant-appellee was called upon to testify, she told the court that she was 68 years old and that she had left her husband because the house they lived in wasn't sanitary and he wouldn't give her another place. She stated that it had no heat and no bathroom. Her reason for being so concerned about the cleanliness of the house was that she had cancer and had a cancer operation and, after September, 1969, needed special attention as a result of the operation. For a while a nurse came to the house to wait on her, but subsequently she moved into a clean place. She concluded her testimony by stating that the major portion of her income came from her husband's railroad pension and that she was still under a doctor's care.

Charles Ivory, son of the defendant and stepson of the plaintiff, testified concerning the condition of the house. He stated that it was run down, the roof was falling in, and the windows were all down. There was hot water, but no heat, other than a coal stove in one room. Concerning his mother's illness, Charles Ivory stated that he was aware of her condition and the treatment required, but that it was not the type of assistance a man could provide. He also testified that after September 16, 1969, his stepfather and mother attended church together very often, and several times his stepfather went to his mother's apartment for dinner.

The trial judge found the issues against the plaintiff and in favor of the

defendant. The court found specifically that the defendant had undergone a radical surgical procedure for carcinoma of the cervix in December of 1971 and has been partially disabled since the operation and ordered the suit for divorce dismissed.

■■ Appellant raised two issues upon appeal. First, he contends that the appellee was guilty of desertion under the divorce statutes of the State of Illinois (Ill. Rev. Stat. 1971, ch. 40, par. 1). The statute reads, in part, as follows:

> "In every case in which a marriage has been or hereafter may be contracted and solemnized between any two persons, and it shall be adjudged * * * that either party * * * has willfully deserted or absented himself or herself from the husband or wife, without any reasonable cause, for the space of one year; * * * it shall be lawful for the injured party to obtain a divorce and dissolution of such marriage contract."

Therefore, desertion justifying a divorce must be willful and without any reasonable cause. (*Holmstedt v. Holmstedt*, 383 Ill. 290, 298, 49 N.E.2d 25.) In order to establish a charge of desertion, the plaintiff is required to prove that the defendant absented herself and remained away from him without any reasonable cause and against his will. *Larimore v. Larimore*, 299 Ill.App. 547, 549, 20 N.E.2d 902.

■■ However, merely leaving one's spouse and remaining away is not enough to support a charge of desertion, even if it is done without reasonable cause and against the other spouse's will. " 'Desertion' imports a cessation of cohabitation, a refusal to live together, which involves an abnegation of all duties and obligations resulting from the marriage contract." (*Lemon v. Lemon*, 14 Ill.2d 15, 150 N.E.2d 608, 612; *Fritz v. Fritz*, 138 Ill. 436, 440, 28 N.E. 1058; *Foster v. Foster*, 110 Ill.App.2d 128, 249 N.E.2d 114, 116.) The marital obligation is made up of many responsibilities and duties. It is the obligation to live conjugally with one another, and to love, support, protect and defend the other. Only the failure, willfully and over the objection of the other, to perform *all* of these duties will condone a decree for divorce. A partial failure will not suffice. (*Williams v. Williams*, 34 Ill.App.2d 210, 214-215, 181 N.E.2d 182.) The facts of the *Williams* case are a good illustration of this point and are somewhat similar to the facts in the case at bar.

In *Williams* the parties had lived together for more than 30 years and they were both in their sixties when the action was commenced. They lived in an old dilapidated structure with rotting floors and sills, and without a furnace or running water. For 15 to 20 years before commencement of the lawsuit, though living in the same house, the parties had no marital relations, they slept in separate rooms, ate separately-cooked

separate meals and scarcely communicated. For 6 years before suit was brought the husband provided nothing for his wife, except that he paid for the fuel and electric bills. In 1958 the husband went to Florida for health reasons, and when he returned he moved into a trailer. Thereafter his wife filed suit for divorce charging desertion. She testified that she didn't do anything about her husband going to Florida, but she was concerned because she felt he was spending some of her money and she didn't want a broken home. Her husband testified that he moved into the trailer because his bedroom in the house had no heat and he had arthritis, and therefore couldn't stand the cold. He said that he just felt safer in the trailer. The trial court thereupon granted his wife the divorce on grounds of desertion and he appealed. The appellate court, in reversing the divorce decree entered in favor of his wife, pointed out that the only question presented for review was whether or not the facts of the case constituted a desertion. In view of the facts presented, the appellate court held that the plaintiff wife had failed to meet the burden of proof that the defendant husband willfully deserted her without reasonable cause and against her will.

■■ It therefore becomes immediately apparent that the spouse alleging desertion must affirmatively prove, by a preponderance of the evidence, that the offending spouse has abnegated all his or her marital obligations, willfully and without consent. (*Williams v. Williams*, 34 Ill. App.2d at 215.) This court has likewise held that the burden is upon the husband suing for divorce on the grounds of desertion to establish that his wife willfully deserted or absented herself from him for 1 year, against his will and without reasonable cause. (*Krueger v. Krueger*, 47 Ill.App.2d 134, 197 N.E.2d 858 (abstract opinion).) Whether or not there has been sufficient evidence presented to establish the moving party's contentions is a determination within the province of the trial court. In the case at bar the trial court judge heard the evidence, viewed the witnesses and was in a better position to decide the issues. Thus, we adhere to the general rule and will not substitute our findings for those of the trial court unless such findings are manifestly against the weight of the evidence. (*Hoffmann v. Hoffmann*, 40 Ill.2d 344, 239 N.E.2d 792; *Foster v. Foster*, 110 Ill.App.2d 128, 249 N.E.2d 114.) From a careful consideration of the record we cannot find that the decision of the trial court is against the manifest weight of the evidence.

■■ Appellant also argues that the reason advanced by the trial court in denying his divorce, that being a "radical surgical procedure" undergone by the appellee, would not have any bearing upon the issue of desertion. Divorce affects not only the home life and domestic relations of the parties, but also the public morals, the prevailing system of social

order and the welfare of all citizens. These interests are not represented by either of the parties to the action. "This protection is left to the court, as the representative of the State, and in a proper case it may refuse to grant the divorce decree, though the grounds of such refusal be outside the issues made by the pleadings of the parties." (*Nusser v. Nusser*, 4 Ill.App.2d 538, 540, 124 N.E.2d 549; see also *Decker v. Decker*, 193 Ill. 285, 288, 61 N.E. 1108.) In the case at bar, the trial judge apparently determined that this was a "proper case." Testimony revealed that the major portion of the appellee's income was composed of her part of her husband's pension and that she would lose this monthly allotment if a divorce were granted. Furthermore, her express reason for leaving her husband was her concern over the uncleanliness and unsanitary nature of the house in light of her need for special care, because she was suffering from cancer. All of this, and the fact that she was 68 years of age, might have led the trial court judge to conclude that if he granted a divorce, the appellee would probably become a ward of the state and this would not be in her best interests or in the best interests of the state. With that in mind, we feel that appellant's argument is without merit.

■■ Appellant's second contention deals with the dismissal of the appellee's suit for separate maintenance on September 16, 1969, by the same trial court judge who heard the case now before us. Appellant asks whether the trial court ruled correctly in denying him a divorce under the laws of the State of Illinois, if the appellee is bound by an order of the court dismissing her complaint for separate maintenance to the extent that the date of the order would be considered the date of desertion. He contends that appellee's failure to prevail in her prior suit for separate maintenance is dispositive of the issues in his suit for divorce on the grounds of desertion. This argument of the appellant is an erroneous application of the principles of res judicata. Res judicata is a legal doctrine relied upon to bar subsequent suits upon the same cause of action and between the same parties or their privies as the former action. The doctrine of res judicata "is that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." (*People v. Kidd*, 398 Ill. 405, 75 N.E.2d 851.) Thus, in order for a prior judgment to bar a subsequent suit because of *res judicata* the parties, subject matter and causes of action must be identical.

■■ On the question of whether or not a decree in a separate maintenance suit is *res judicata* as to the issues in a suit for divorce, the Illinois Supreme Court has already spoken. (*Hoffman v. Hoffman*, 330 Ill. 413,

161 N.E. 723; *Umlauf v. Umlauf,* 117 Ill. 580, 6 N.E. 455.) In *Hoffman, supra,* the court found that the issues in a suit for separate maintenance and a suit for divorce are *not* the same. (330 Ill. at 418.) To entitle a wife to a decree for separate maintenance she must prove that she is living separate and apart from her husband without fault on her part. (Ill. Rev. Stat. 1971, ch. 68, par. 22.) Whereas, to justify a decree for divorce on the ground of desertion the complainant must prove that his or her spouse has "willfully deserted or absented himself or herself from the husband or wife, without any reasonable cause for the space of one year; * * *." (Ill. Rev. Stat. 1971, ch. 40, par. 1.)

Dismissal of a wife's suit for separate maintenance only establishes that she is not living separate and apart without fault, but it does *not* establish that she willfully deserted her husband for 1 year without reasonable cause. She may be living separate and apart from her husband, not without fault on her part, but without having deserted him. It does not follow, therefore, that merely because the appellee lost her suit for separate maintenance, the appellant is entitled to a divorce decree here on grounds of desertion.

Thus, we hold that the decision of the trial court was not against the manifest weight of the evidence and that the dismissal of appellee's suit for separate maintenance was not res judicata as to the issues in the case at bar.

Judgment affirmed.

G. MORAN, P. J., and CREBS, J., concur.